06-18 TP 9/25

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, Plaintiff, | * | CIVIL ACTION NO. 06-427 S |
| v. | * | |
| CHERYL GRECO and ESSEX EXCAVATING CORPORATION, Defendants | * | |

**CONSENT JUDGMENT AND ORDER**

Defendant Cheryl Greco and Plaintiff, Elaine L. Chao, Secretary of Labor, United States Department of Labor, (the "Secretary") have agreed to resolve all matters in controversy in this action (except for the imposition by Plaintiff of any penalty pursuant to ERISA Section 502(l) and any proceedings related thereto), and said parties do now consent to entry of a Judgment and Order by this Court in accordance therewith.

The parties agree, for purposes of any future assessment of penalty pursuant to ERISA §502(l), 29 U.S.C. §1132(l), that the "applicable recovery amount" shall be the amount of $14,315.34 as set forth in paragraph 1, below. This agreement will not operate to prevent defendant Cheryl Greco from seeking a waiver of any future assessment of penalty pursuant to ERISA §502(l), 29 U.S.C. §1132(l).

Defendant Cheryl Greco has admitted to the jurisdiction of this Court over her and over the subject matter of this action.

Upon consideration of the record herein, and as agreed to by the parties, the Court finds that it has jurisdiction to enter this Consent Judgment and Order.

Defendant Cheryl Greco, having agreed to entry of this Consent Judgment and Order, and with due consideration and being fully advised of the premises,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. Defendant Cheryl Greco is hereby ordered to restore to the Essex Excavating SIMPLE IRA Plan (hereinafter "the Plan") the amount of $14,315.34 plus interest at the post judgment interest rate, calculated from the date of this order to the date of final payment.

2. Defendant Cheryl Greco waives any legal or equitable interest she may have in the Plan. Defendant Greco shall deposit all amounts paid under the terms of this Consent Judgment and Order to a trust account in the name of the Plan for the benefit of the non-trustee participants in the Plan. Amounts shall be allocated to the non-trustee participants as set forth in Appendix A to this Judgment. Within thirty (30) days of establishment of the trust account, Ms. Greco shall provide the Department with proof that the account has been established.

3. Restitution to the Plan shall be made by Cheryl Greco in accordance with the following repayment schedule: Defendant Cheryl Greco shall pay the amount of $175.00 per month for a period of five (5) years, in a series of sixty monthly installment payments. The first monthly installment payment is due on or before August 31, 2007 and the final monthly installment payment shall occur on or before July 31, 2012. In addition to the foregoing, to the extent that Ms. Greco's "annual pre-tax income" exceeds certain dollar limits she is obligated to contribute addition amounts to the Plan for the benefit of non-trustee participants in the Plan. Ms. Greco's obligation to make additional contributions to the Plan is set forth in Appendix B attached to this Judgment.

The foregoing restitution schedule is based upon a Declaration of Financial Status executed by defendant Cheryl Greco on March 26, 2007. If any material representation made in that Declaration of Financial Status later is determined to have been falsely given, the entire Judgment amount of $14,315.34 plus interest as set forth in paragraph 1, less any amounts already paid to the Plan, shall become due and owing immediately. In order to ensure compliance with the restitution schedule, on an annual basis Ms. Greco shall provide the Department with copies of bank statements for the trust account opened in the name of the Plan as follows: for the first year the account is opened, Ms. Greco shall provide the Department with bank statements on a quarterly basis, for the remaining years, Ms. Greco shall provide the Department with bank statements on a semi-annual basis.

4. Within thirty (30) days of the date of entry of this Judgment, defendant Cheryl Greco shall provide participants listed in Appendix A with a copy of this Consent Judgment and Order and Appendices hereto. Within thirty (30) days of transmitting copies of this Consent Judgment, defendant Cheryl Greco shall provide the Department with proof that the Consent Judgment has been provided to Plan participants. Defendant Cheryl Greco shall take all appropriate steps to maintain current addresses and contact information for the participants in the Plan.

5. Defendant Cheryl Greco shall ensure that distributions under the Plan are effected within ninety (90) days following the completion of restitution under this Judgment. In effecting distributions under the Plan, defendant Cheryl Greco shall follow all appropriate steps to locate participants of the Plan, as outlined in the Department of Labor Field Assistance Bulletin 2004-02 attached hereto as Appendix C.

6. Defendant Cheryl Greco shall take all steps to terminate the Plan, including but not limited to executing any and all documents necessary to effect termination of the Plan. Defendant Cheryl Greco shall ensure that the Plan is terminated within thirty (30) days after final distributions as set forth in paragraph 5 are made under the Plan.

7. Defendant Cheryl Greco shall provide the Department of Labor with proof of distributions made under the terms of the Plan. With respect to providing the Department with notification or verification of matters set forth in this Consent Judgment, said notification shall be provided to: United States Department of Labor, Employee Benefits Security Administration, JFK Federal Building, Room 575, Boston, MA 02203, Attention: Investigator Amy Goyer.

8. Defendant Cheryl Greco is permanently enjoined from violating the provisions of Title I of ERISA. Following the termination of the Plan as set forth below, defendant Cheryl Greco is enjoined from serving as a fiduciary to any ERISA covered Plan.

9. Each party shall bear its own fees and expenses with respect to this action.

10. The Court shall retain jurisdiction of this matter for the purposes of enforcing this Consent Judgment and Order.

11. Nothing in this Judgment is binding on any governmental agency other than the United States Department of Labor.

IT IS SO ORDERED THIS ______________ day of __________________, 2007.

______________________________
United States District Judge

Consented to by:

For the Plaintiff
Secretary of Labor:

Frank V. McDermott
Regional Solicitor

*Maureen L. Canavan* — *10/2/07*

Maureen L. Canavan — Dated
Attorney BBO#550969
U.S. Department of Labor
Office of the Solicitor
J.F.K. Federal Building, Room E-375
Boston, MA 02203

For the Defendant:

*Cheryl Greco* — *9-19-07*

Cheryl Greco — Dated

APPENDIX A

| Participant | Recovery Amount |
|---|---|
| Joseph Abelha | $2,164.12 |
| Milton Benevides | $2,600.00 |
| William Byrne | $5,714.28 |
| Jeffrey Dunton | $1,025.15 |
| Oakler Gaines | $1,536.79 |
| Cynthia Mansolillo | $1,275.00 |
| Total: | $14,315.34 |

APPENDIX B

1. The term "annual pretax gross income" is used solely for the purpose of this Consent Judgment. Defendant Cheryl Greco's "annual pretax gross income" includes the total of the following:

(a) adjusted gross income as defined in the Internal Revenue Code which governs the filing of Federal personal income taxes for tax year 2006 for Cheryl Greco.

plus (b) all cash and non-cash inheritances received by Ms. Greco, excluding cash or non-cash inheritances from Harold Greco, Jr. of property listed on the financial declaration submitted to the Secretary of Labor by Ms. Greco dated March 26, 2007 or owned by Harold Greco, Jr. as of March 26, 2007 whether or not listed on said declaration.

plus (c) all cash and non-cash gifts over $10,000 in value received by Cheryl Greco from any one donor during any one calendar year, to the extent any one such gift exceeds $10,000 except that all cash or non-cash gifts received by Ms. Greco from her spouse are excluded from "annual pre-tax gross income"

plus (d) any income from sources which are required to be reported for information purposes on 2006 Internal Revenue Service Form 1040, Item 21.

2. The term "annual pretax gross income" used for the purposes of this settlement shall not include any net operating losses, carryovers from tax years prior to tax year 2006 or other losses attributable to tax years prior to tax year 2006.

3. For purposes of defining "annual pretax gross income" in this settlement, proceeds from life insurance policies upon the death of an insured, including Harold Greco, Jr., and cash value or other proceeds of life insurance which may be withdrawn in the event that Cheryl Greco becomes terminally ill, shall be included in "annual pre-tax gross income" only if and to the extent that they are includable as income pursuant to the Internal Revenue Code and regulations promulgated thereunder.

4. The term "annual pretax gross income" used for the purposes of this settlement shall include that portion of proceeds from the sale of Cheryl Greco's principal residence that would be considered taxable capital gain to Cheryl Greco (that is, the share of any such gain allocable to Cheryl Greco) in the event that Cheryl Greco sells her principal residence.

5. The term "annual pretax gross income" used for the purposes of this settlement shall not include any income from a reverse mortgage that Cheryl Greco may take on her principal residence.

6. The term "annual pretax gross income" used for the purposes of this settlement shall not include those amounts withdrawn by Cheryl Greco from her individual retirement accounts in order to make payment pursuant to this Judgment and in order to pay taxes on said withdrawals.

7. In addition to the minimum monthly installment payments mandated by paragraph 3 of this Consent Judgment, to the extent Cheryl Greco's "annual pretax gross income" exceeds the amount set forth below, she shall be required to accelerate restitution to the Plan and shall be required to pay additional amounts as follows:

| Annual pretax gross income | payment |
|---|---|
| under $40,000 | 0 |
| $40,000-$45,000 | 10% of the amount between $40,000 and $45,000 |
| $45,000-$55,000 | plus 20% of the amount between $45,000 and $55,000 |
| $55,000-$65,000 | plus 25% of the amount between $55,000 and $65,000 |
| $65,000-$75,000 | plus 30% of the amount between $65,000 and $75,000 |
| $75,000-$85,000 | plus 35% of the amount between $75,000 and $85,000 |
| $85,000 and up | plus 40% of the amount over $85,000 |

8. The first annual income period for the purposes of Paragraph 7 will commence on January 1, 2007, and the last annual income period will end on December 31, 2012. The payment date will be April 15th of each year for the preceding year ended on December 31st. Upon any default, the Department of Labor shall have the right to accelerate the balance due under the Judgment.

9. Ms. Greco shall submit to the Department of Labor documentation of her annual pretax gross income as defined above to determine liability and other financial documentation as may be requested in writing by the Department of Labor including, but not limited to, all federal and state income tax returns filed by Ms. Greco for the taxable period January 1, 2007 through December 31, 2012 and confidential Declarations of Financial Status executed on April 15, 2008, April 15, 2009, April 15, 2010, April 15, 2011, April 15, 2012 and April 15, 2013 which Declarations of Financial status cover the preceding tax year. Ms. Greco will cooperate in answering any questions regarding the financial information that she submits to the Department of Labor. Failure of Ms. Greco to make payment, to submit documents timely or to cooperate with the Department of Labor may constitute a default under this Order and accelerate the balance due of the unpaid Judgment. If Ms. Greco applies for and is granted an extension for filing her income tax returns with the IRS, the date when said return is due shall be substituted for April 15th, if a copy of said extension is filed prior to April 15th of the appropriate year with

the Department of Labor. Ms. Greco will notify the Department of Labor of any change of address.

10. Paragraph one (1) of the Judgment will be satisfied when one of the following events occurs:

(a) The Plan receives a total of $14,315.00 plus interest from Cheryl Greco; or

(b) Ms. Greco makes final payment to the Plan of all monies required to be paid pursuant to paragraph 3 of the Judgment and in accordance with the formula set forth in this Appendix on or before July 31, 2012, and

(i) there has been full compliance with all terms of this judgment dealing with payment amounts due, payment dates and furnishing of necessary financial information to the Department of Labor, and

(ii) there has been no material misrepresentation made to the Department of Labor in any financial statement or document, and

(iii) there has been no default of any term of the judgment.

Appendix C

**U.S. Department of Labor** Employee Benefits Security Administration
Washington, D.C. 20210

## FIELD ASSISTANCE BULLETIN NO. 2004-02

DATE: SEPTEMBER 30, 2004

MEMORANDUM FOR: VIRGINIA SMITH, DIRECTOR OF ENFORCEMENT
REGIONAL DIRECTORS

FROM: ROBERT J. DOYLE
DIRECTOR OF REGULATIONS AND INTERPRETATIONS

SUBJECT: FIDUCIARY DUTIES AND MISSING PARTICIPANTS IN TERMINATED DEFINED CONTRIBUTION PLANS

ISSUE:

What does a plan fiduciary need to do in order to fulfill its fiduciary obligations under ERISA with respect to: (1) locating a missing participant of a terminated defined contribution plan; and (2) distributing an account balance when efforts to communicate with a missing participant fail to secure a distribution election?

BACKGROUND:

All plan assets must be distributed as soon as administratively feasible after the date of a plan termination in order to effectively complete a plan termination under Internal Revenue Code requirements.[1] Prior to any distribution, the Code requires a plan administrator to contact all participants for affirmative directions regarding distribution of their account balances.[2] This notice requirement extends to all participants, regardless of their length of service or the size of their account balances, because all participants vest in their account balances upon termination of the plan.[3]

---

[1] *See* Rev. Rul. 89-87, 1989-2 C.B. 81.

[2] Under Internal Revenue Code (Code) §402(f), a plan administrator is required, prior to making an eligible rollover distribution, to provide the participant with a written explanation of the Code provisions under which the participant may elect to have the distribution transferred directly to an IRA or another qualified plan, the provision requiring tax withholding if the distribution is not directly transferred and the provisions under which the distribution will not be taxed if the participant transfers the distribution to an IRA or another qualified plan within 60 days of receipt.

[3] Under Code §411(d)(3), a plan must provide that, upon its termination or complete discontinuance of contributions, benefits accrued to the date of termination or discontinuance of contributions become vested to the extent funded on such date.

In the context of terminated defined contribution plans, some participants may be unresponsive to written notices from plan administrators asking for direction regarding the distribution of their account balances: these participants are commonly referred to as missing participants.[4] As a result of participants' unresponsiveness, plan administrators often are unable to effectively wind–up the plans' financial affairs and are confronted with an array of issues related to their duties under the fiduciary responsibility provisions of ERISA to search for missing participants and distribute their benefits.

The Department has previously issued guidance to fiduciaries of terminated defined contribution plans on the handling of certain missing participant issues. However, Field Offices have, in the course of their investigations, found that plan fiduciaries use a variety of methods in searching for missing participants and distributing account balances when a search proves unsuccessful. Additional guidance, therefore, has been requested concerning the obligations of plan fiduciaries that are confronted with missing participant issues in terminated defined contribution plans.[5]

ANALYSIS:

Consistent with the requirements of section 404(a) of ERISA, a fiduciary must act prudently and solely in the interest of the plan's participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan. Also, under section 404(a)(1)(D) of ERISA, fiduciaries are required to act in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of Title I and IV. Section 402(b)(4) of ERISA provides that every employee benefit plan shall specify the basis on which payments are made to and from the plan. Section 403(a) of ERISA generally requires that the assets of a plan be held in trust by a trustee. In the case of plan terminations, fiduciaries must also ensure that the allocation of any previously unallocated funds is made in accordance with the provisions of section 403(d) of ERISA.

Under Title I of ERISA, the decision to terminate a plan is generally viewed as a "settlor" decision rather than a fiduciary decision relating to the administration of the plan. However, the steps taken to implement this decision, including steps to locate missing participants, are governed by the fiduciary responsibility provisions of ERISA.[6] Further, in our view, while the distribution of the entire benefit to which a participant is entitled ends his or her status as a plan participant and the distributed assets cease to be plan assets under ERISA, a plan fiduciary's choice of a distribution option is a fiduciary decision subject to the general fiduciary responsibility provisions of ERISA.[7]

---

[4] The Department notes that this guidance applies only in the context of terminated defined contribution plans. For rules governing the Pension Benefit Guaranty Corporation's missing participants program, which applies to terminated defined benefit plans covered by Title IV of ERISA, see ERISA § 4050 and 29 CFR § 4050.

[5] This guidance assumes that the terminated plan does not provide an annuity option and that no other appropriate defined contribution plans are maintained within the sponsoring employer's corporate group to which account balances from the terminated plan could be transferred..

[6] *See* Advisory Opinion 2001-01A (Jan. 18, 2001); *see also* Letter to John N. Erlenborn from Dennis M. Kass (Mar. 13, 1986).

[7] *See* Rev. Rul. 2000-36 where the Department stated that the selection of an IRA trustee, custodian or issuer and of an IRA investment for purposes of a default rollover pursuant to a plan provision would constitute a fiduciary act under ERISA.

It is our view that a plan fiduciary must take certain steps in an effort to locate a missing participant or beneficiary before the plan fiduciary determines that the participant cannot be found and distributes his or her benefits in accordance with this Bulletin. These steps are identified below under the heading 'Search Methods." It also is our view that, in determining any additional steps that may be appropriate with regard to a particular participant, a plan fiduciary must consider the size of the participant's account balance and the expenses involved in attempting to locate the missing participant. Accordingly, the specific steps that a plan fiduciary takes to locate a missing participant may vary depending on the facts and circumstances. This consideration of additional steps is discussed below under the heading "Other Search Options." Reasonable expenses attendant to locating a missing participant may be charged to a participant's account, provided that the amount of the expenses allocated to the participant's account is reasonable and the method of allocation is consistent with the terms of the plan and the plan fiduciary's duties under ERISA.[8] Whatever decisions are made in connection with locating of missing participants or the distribution of assets on their behalf, plan fiduciaries must be able to demonstrate compliance with ERISA's fiduciary standards.

SEARCH METHODS

In the context of a defined contribution plan termination, one of the most important functions of the plan's fiduciaries is to notify participants of the termination and of the plan's intention to distribute benefits. In most instances, routine methods of delivering notice to participants, such as first class mail or electronic notification, will be adequate. In the event that such methods fail to obtain from the participant the information necessary for the distribution, or the plan fiduciary has reason to believe that a participant has failed to inform the plan of a change in address, plan fiduciaries need to take other steps to locate the participant or a beneficiary. In our view, some search methods involve such nominal expense and such potential for effectiveness that a plan fiduciary must always use them, regardless of the size of the participant's account balance. A plan fiduciary cannot distribute a missing participant's benefits in accordance with the distribution options discussed below unless each of these methods proves ineffective in locating the missing participant. However, a plan fiduciary is not obligated to take each of these steps if one or more of them are successful in locating the missing participant. These methods are:

1) *Use Certified Mail.* Certified mail can be used to easily ascertain, at little cost, whether the participant can be located in order to distribute benefits.

2) *Check Related Plan Records.* While the records of the terminated plan may not have current address information, it is possible that the employer or another plan of the employer, such as a group health plan, may have more up-to-date information with respect to a given participant or beneficiary. For this reason, plan fiduciaries of the terminated plan must ask both the employer and administrator(s) of related plans to search their records for a more current address for the missing participant. If there are privacy concerns, the plan fiduciary that is engaged in the search can request the employer or other plan fiduciary to contact or forward a letter on behalf of the

---

[8] *See generally* Field Assistance Bulletin 2003-3 (May 19, 2003) for the Department's views with respect to expense allocations in defined contribution plans. *See also* Rev. Rul. 2004-10, 2004-7 I.R.B. (Jan. 29, 2004).

terminated plan to the participant or beneficiary, requesting the participant or beneficiary to contact the plan fiduciary.

3) *Check with Designated Plan Beneficiary*. In connection with a search of the terminated plan's records or the records of related plans, plan fiduciaries must attempt to identify and contact any individual that the missing participant has designated as a beneficiary (e.g., spouse, children, etc.) for updated information concerning the location of the missing participant. Again, if there are privacy concerns, the plan fiduciary can request the designated beneficiary to contact or forward a letter on behalf of the terminated plan to the participant, requesting the participant or beneficiary to contact the plan fiduciary.

4) *Use a Letter-Forwarding Service*. Both the Internal Revenue Service (IRS) and the Social Security Administration (SSA) offer letter-forwarding services. Plan fiduciaries must choose one service and use it in attempting to locate a missing participant or beneficiary. The IRS has published guidelines under which it will forward letters for third parties for certain "humane purposes," including a qualified plan administrator's attempt to locate and pay a benefit to a plan participant.[9] The SSA's letter forwarding service may be used for similar purposes, and is described on the SSA's website.[10] It is our understanding that to use either the IRS or SSA program, the plan fiduciary/requestor must submit a written request for letter forwarding to the agency, and must provide the missing participant's social security number or certain other identifying information. Both the IRS and SSA will search their records for the most recent address of the missing participant and will forward a letter from the plan fiduciary/requestor to the missing participant if appropriate. In using these letter-forwarding services to notify a missing participant that he or she is entitled to a benefit, the plan fiduciary's letter should provide contact information for claiming the benefit. This notice may also suggest a date by which the participant must respond, as neither the IRS nor the SSA will notify the plan fiduciary as to whether the participant was located.

OTHER SEARCH OPTIONS

In addition to using the search methods discussed above, a plan fiduciary should consider the use of Internet search tools, commercial locator services, and credit reporting agencies to locate a missing participant. Depending on the facts and circumstances concerning a particular missing participant, it may be prudent for the plan fiduciary to use one or more of these other search options. If the cost of using these services will be charged to the missing participant's account, plan fiduciaries will need to consider the size of the participant's account balance in relation to the cost of the services when deciding whether the use of such services is appropriate.

DISTRIBUTION OPTIONS

There will be circumstances when, despite their use of the search methods described above, plan fiduciaries will be unable to locate participants or otherwise obtain directions concerning the distribution of their benefits from terminated defined contribution plans. In these circumstances, plan fiduciaries will nonetheless have to consider distribution options in order to effectuate the

---

[9] *See* Rev. Proc. 94-22, 1994-1 C.B. 608; IRS Policy Statement P-1-187.

[10] The Social Security Administration's website is found at www.ssa.gov.

termination of the plan.[11] We have set forth below the fiduciary considerations that are relevant to the various options available to plan fiduciaries in the context of missing participants of terminated defined contribution plans.

*Individual Retirement Plan Rollovers*

In our view, plan fiduciaries must always consider distributing missing participant benefits into individual retirement plans (i.e., an individual retirement account or annuity).[12] Establishing an individual retirement plan is the preferred distribution option because it is more likely to preserve assets for retirement purposes than any of the other identified options.

Distribution to an individual retirement plan preserves retirement assets because it results in a deferral of income tax consequences for missing participants. A distribution that qualifies as an eligible rollover distribution[13] from a qualified plan, which is handled by a trustee to trustee transfer into an individual retirement plan, will not be subject to immediate income taxation, the 20 percent mandatory income tax withholding requirement, or the 10 percent additional tax for premature distributions that may be required based on the participant's age and related facts.[14]

As we have noted in other contexts, the choice of an individual retirement plan also raises fiduciary issues as to the particular choice of an individual retirement plan trustee, custodian or issuer as well as the selection of an initial individual retirement plan investment to receive the distribution.[15] By regulation, the Department established a safe harbor for plan fiduciaries to satisfy their fiduciary responsibility under section 404(a) of ERISA when selecting individual retirement plan providers and initial investments in connection with the rollover of certain mandatory distributions to individual retirement plans.[16] In general, this regulation applies to distributions of $5,000 or less for separating participants who leave an employer's workforce without making an election to either receive a taxable cash distribution or directly roll over assets into an individual retirement plan or another qualified plan.

In our view, the circumstances giving rise to relief under this safe harbor regulation are similar to those confronting fiduciaries of terminated defined contribution plans. Therefore, in the context of making distributions from terminated defined contribution plans on behalf of participants who are determined to be missing or otherwise fail to elect a method of distribution in connection with the termination, fiduciaries who choose investment products that are designed to preserve principal should, as an enforcement matter, be treated as satisfying their fiduciary duties in connection with such distributions, when the fiduciary complies with the relevant requirements

---

[11] *See supra* footnote 1.
[12] Code §7701(a)(37) defines an "individual retirement plan" to mean an individual retirement account described in Code §408(a) and an individual retirement annuity described in Code §408(b).
[13] An "eligible rollover distribution" is, subject to certain limited exceptions, any distribution to an employee of all or any portion of the balance to the credit of the employee in a qualified trust. See Code §402(c) and (f)(2)(A).
[14] Code §402(a), §3405(c), and §72(t).
[15] *See supra* footnote 6.
[16] *See* 29 C.F.R. §2550.404a-2.

of the automatic rollover safe harbor regulation, without regard to the amount involved in the rollover distribution.[17]

*Alternative Arrangements*

If a plan fiduciary is unable to locate an individual retirement plan provider that is willing to accept a rollover distribution on behalf of a missing participant, plan fiduciaries may consider either establishing an interest-bearing federally insured bank account in the name of a missing participant or transferring missing participants' account balances to state unclaimed property funds. In this regard, fiduciaries should be aware that transferring a participant's benefits to either a bank account or state unclaimed property fund will subject the deposited amounts to income taxation, mandatory income tax withholding and a possible additional tax for premature distributions. Moreover, interest accrued would also be subject to income taxation. Plan fiduciaries should not use 100% income tax withholding as a means to distribute plan benefits to missing participants.

Federally Insured Bank Accounts

Plan fiduciaries may consider establishing an interest bearing federally insured bank account in the name of a missing participant, provided the participant would have an unconditional right to withdraw funds from the account. In selecting a bank and accepting an initial interest rate, with or without a guarantee period, a plan fiduciary must give appropriate consideration to all available information relevant to such selection and interest rate, including associated bank charges.

Escheat to State Unclaimed Property Funds

As an alternative, plan fiduciaries may also consider transferring missing participants' account balances to state unclaimed property funds in the state of each participant's last known residence or work location. We understand that some states accept such distributions on behalf of missing participants. We also understand that states often provide searchable Internet databases that list the names of property owners and, in some instances, award minimal interest on unclaimed property funds.

In prior guidance, the Department concluded that, if a state unclaimed property statute were applied to require an ongoing plan to pay to the state amounts held by the plan on behalf of terminated employees, the application of that statute would be preempted by section 514(a) of ERISA.[18] However, we do not believe that the principles set forth in Advisory Opinion 94-41A, which dealt with a plan fiduciary's duty to preserve plan assets held in trust for an ongoing plan, prevent a plan fiduciary from voluntarily deciding to escheat missing participants' account balances under a state's unclaimed property statute in order to complete the plan termination process.

---

[17] It should be noted that Class Exemption (PTE No. 2004-16) generally provides relief from ERISA's prohibited transaction provisions for a plan fiduciary's selection of itself as the provider of an individual retirement plan and/or issuer of an investment in connection with rollovers of missing participant accounts for amounts up to $5,000.

[18] Advisory Opinion 94-41A (Dec. 7, 1994).

Additionally, we believe that a plan fiduciary's transfer of a missing participant's account balance from a terminated defined contribution plan to a state's unclaimed property fund would constitute a plan distribution, which ends both the property owner's status as a plan participant and the property's status as plan assets under ERISA.[19]

In deciding between distribution into a state unclaimed property fund and distribution into a federally insured bank account, we believe that a plan fiduciary should evaluate any interest accrual and fees associated with a bank account against the availability of the state unclaimed property fund's searchable database that may facilitate the potential for recovery. In any event, transfer to state unclaimed property funds must comply with state law requirements.

<u>100% Income Tax Withholding</u>

We are aware that some plan fiduciaries believe that imposing 100% income tax withholding on missing participant benefits, in effect transferring the benefits to the IRS, is an acceptable means by which to deal with the benefits of missing participants. After reviewing this option with the staff of the Internal Revenue Service, we have concluded that the use of this option would not be in the interest of participants and beneficiaries and, therefore, would violate ERISA's fiduciary requirements. Based on discussions with the IRS staff and our understanding of the IRS's current data processing, the 100% withholding distribution option would not necessarily result in the withheld amounts being matched or applied to the missing participants'/taxpayers' income tax liabilities resulting in a refund of the amount in excess of such tax liabilities.[20] This option, therefore, should not be used by plan fiduciaries as a means to distribute benefits to plan participants and beneficiaries.

MISCELLANEOUS ISSUES

Fiduciaries have expressed concerns about legal impediments that might hinder the establishment of individual retirement plans or bank accounts on behalf of missing participants. These impediments include perceived conflicts with the customer identification and verification provisions of the USA PATRIOT Act (Act).[21] With regard to this problem, we note that Treasury staff, along with the staff of the other Federal functional regulators,[22] has issued helpful guidance for fiduciaries that are establishing an individual retirement plan or federally insured bank account in the name of a missing participant. This guidance was published in a set of questions and answers on the customer identification and verification provision (CIP) of the Act, "FAQs: Final CIP Rule," on the regulators' websites.[23]

---

[19] Prior Departmental Advisory Opinions addressed distributions from ongoing plans. *See, e.g.*, Advisory Opinion 94-41A (Dec. 7, 1994); Advisory Opinion 79-30A (May 14, 1979); Advisory Opinion 78-32A (Dec. 22, 1978). We note, however, that this memorandum addresses only distributions that complete the termination of defined contribution plans.

[20] *See, e.g.*, Code section 6511 (regarding the time limitations for taxpayer refunds).

[21] Pub. L. No. 107-56, Oct. 26, 2001, 115 Stat. 272.

[22] The term "other Federal functional regulators" refers to the other agencies responsible for administration and regulations under the Act.

[23] *See* "FAQs: Final CIP Rule" at: http://www.occ.treas.gov/10.pdf
http://www.fincen.gov/finalciprule.pdf

The Federal functional regulators advised the Department that they interpret the CIP requirements of section 326 of the Act and implementing regulations to require that banks and other financial institutions implement their CIP compliance program with respect to an account (including an individual retirement plan or federally insured bank account) established by an employee benefit plan in the name of a former participant (or beneficiary) of such plan, only at the time the former participant or beneficiary first contacts such institution to assert ownership or exercise control over the account. CIP compliance will not be required at the time an employee benefit plan establishes an account and transfers the funds to a bank or other financial institution for purposes of a distribution of benefits from the plan to a separated employee.

With regard to the application of state laws, including those governing signature requirements and escheat, we note that such issues are beyond the Department's jurisdiction.

CONCLUSION

Actions taken to implement the decision to terminate a plan, including the search for missing participants, and if search efforts fail, the selection of a distribution option for the benefits of missing participants, are governed by the fiduciary responsibility provisions of ERISA. In fulfilling their duties of prudence and loyalty to missing participants, we believe there are certain search methods which involve such nominal expense and potential for effectiveness that fiduciaries must always use them, regardless of the size of the account balance, as discussed in detail above.

We also believe that these duties require that fiduciaries consider establishing individual retirement plans as the preferred method of distribution for the benefits of missing participants. In this regard, the selection of an individual retirement plan provider and the initial investment for an individual retirement plan also constitute fiduciary decisions. If plan fiduciaries are unable to locate an individual retirement plan provider that is willing to accept a rollover distribution, fiduciaries may consider distributing a missing participant's benefits into a federally insured bank account or transferring a missing participant's benefit to a state unclaimed property fund; the factors to be considered in choosing between these options are discussed more fully above.

Questions concerning the information contained in this Bulletin may be directed to the Division of Fiduciary Interpretations, Office of Regulations and Interpretations, 202.693.8510.

---

http://www.fdic.gov/news/news/financial/2004/FIL0404a.html